FILED
2013 Sep-30  AM 09:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **KAREN FARRELL ALDRIDGE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 6:12-CV-2671-VEH** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION[1]

Plaintiff Karen Farrell Aldridge ("Ms. Aldridge") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Aldridge timely pursued and exhausted her administrative remedies

---

[1]Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on September 16, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Aldridge was 47 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). *See* Tr. 114. She has completed a General Educational Development ("GED") test. Tr. 158. Her past work experience includes employment as a binder, laborer, nurse's aide, housekeeper, census taker, and cashier. Tr. 175. She claims she became disabled on June 6, 2007, due to a workplace accident that required amputations to the index, middle, and ring fingers on her right (dominant) hand. Tr. 153. Her last period of work ended on June 4, 2007. *Id.*

On March 16, 2009, Ms. Aldridge protectively filed a Title II application for a period of disability and DIB. Tr. 49. On April 17, 2009, the Commissioner initially denied these claims. *Id.* Ms. Aldridge timely filed a written request for a hearing on May 29, 2009. *Id.* The ALJ conducted a hearing on the matter on August 31, 2010. *Id.* On September 15, 2010, he issued his opinion concluding Ms. Aldridge was not disabled and denying her benefits. Tr. 54. She timely petitioned the Appeals Council to review the decision on November 10, 2010. Tr. 5. On June 12, 2012, the Appeals Council issued a denial of review on her claim. Tr. 1.

Ms. Aldridge filed a Complaint with this court on August 9, 2012, seeking

2

review of the Commissioner's determination.  Doc. 1.  The Commissioner answered on November 13, 2012. Doc. 5.The Commissioner filed a supporting brief (Doc. 7) on January 28, 2013, but Ms. Aldridge did not file such a brief on her own behalf before the deadline imposed by this court. With the case therefore under submission, the court has carefully considered the record and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal

standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

4

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.     Ms. Aldridge met the insured status requirements of the Social Security Act through March 31, 2008.

2.     She had not engaged in substantial gainful activity during the period from her alleged onset date, June 6, 2007, through her date last insured of March 31, 2008.

3.     Through the date last insured, she had the following severe impairment: partial amputation of the index, middle, and ring fingers from the right (dominant) hand.

4.     She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.     Through the date last insured, she had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except she could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs. She could occasionally balance, stoop, kneel, crouch, and crawl. She was limited in handling and feeling with her right hand. She should avoid hazardous work environments such as dangerous machinery and unprotected heights.

6.     Through the date last insured, she was unable to perform any past relevant work.

7.     She was born on March 2, 1963, and was 45 years old, which is defined as a younger individual age 18-49, on the date last insured.

8.     She had at least a high school education and was able to communicate in English.

9.     Transferability of job skills was not material to the determination of

6

disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

10. Through the date last insured, considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could have performed.

11. Ms. Aldridge had not been under a disability, as defined in the Social Security Act, from June 6, 2007, through March 31, 2008, the date last insured.

Tr. 50-53.

## ANALYSIS

## I.   Introduction

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[3] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

_____

[3]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Ms. Aldridge argues in her Complaint that the ALJ's conclusions and factual findings are not supported by substantial evidence and are also "contrary to law and regulation." Doc. 1. ¶ 6. Having not submitted a brief, Ms. Aldridge did not further explain her arguments. Based on its own examination of the record,[4] the court disagrees with both of her objections.

## II.   Substantial evidence supports the ALJ's conclusion that Ms. Aldridge had the RFC to perform light work.

It is obvious, from her hearing testimony and from other parts of the record, that Ms. Aldridge disputes that she can return to work of any kind because of her hand injuries. *See, e.g*, Tr. 42-43. The court will thus analyze here the ALJ's conclusion that she still had the capacity to perform "light" work[5] despite her impairment. As explained below, the ALJ applied proper legal standards in his

---

[4]Although Ms. Aldridge did not specify her objections to the Commissioner's decision, the court must still "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.

[5]The Regulations define "light work" in the following manner:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

treatment of the medical opinion evidence and in his decision to discredit Ms. Aldridge's subjective complaints of pain. Altogether, this evidence substantially supports his RFC determination.

### A.    The ALJ properly treated the medical opinion evidence.

The ALJ mainly focused on the opinion evidence offered by Dr. Nicholas Mansuetta, D.O., Ms. Aldridge's orthopaedic surgeon. A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation omitted). The opinion is usually entitled to more weight than that of a non-treating physician. *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) (citation omitted). Indeed, if the opinion is supported by the available medical evidence, it is entitled to deference. *See* 20 C.F.R. § 404.1527(c).

The record reveals that Dr. Mansuetta treated Ms. Aldridge on at least five occasions in the early months of 2008. Tr. 252-57. On January 22, 2008, Dr. Mansuetta examined her in a follow-up appointment after a recent surgical procedure to excise material from one of her impaired fingers. Tr. 257. Although she reported some pain at the surgical site, her wound was "well-healed," according to Dr. Mansuetta. *Id.* He also opined that there was "no erythema and no fluctuance." *Id.*

Importantly, he said, "We will allow her to go back to light duties at work on or after this coming Monday." *Id.* The ALJ justifiably emphasized this comment on Ms. Aldridge's employment capability, as it occurred within her alleged disability window. Tr. 51. On March 4, 2008, Dr. Mansuetta further observed the following:

> Pain symptoms in that finger have completely resolved. She has no further complaints at this time. She is offering her injured hand to handshake now and is not demonstrating any abnormal pain syndromes. Active and passive range of motion is unchanged. Grip and pin strength are unchanged.

Tr. 256. He also noted:

> The patient feels as if she is ready to try to go back to work but is concerned about her endurance and stamina and also reports some significant pain at night after she does physical work with the hand. For these reasons, we are going to send her for one month of work hardening with physical therapy and then anticipate a return to some work functions on a regular basis. It is unclear at this time what her permanent impairment will be . . . .

*Id.* On April 1, 2008, Dr. Mansuetta recorded, "She is doing well in her volunteer work with the Salvation Army and is using her hand increasingly without much difficulty." Tr. 255. He also wrote, "[Ms. Aldridge] wants to try to get back to regular work but does not feel that she has the stamina to put in a full days work yet. I think it would be acceptable to try a partial workweek at her regular job." *Id.* On May 13, 2008, Dr. Mansuetta observed that Ms. Aldridge was using her injured hand at work and that it was not given her "any particular pain." Tr. 254. He further decided to release her to "full work duties." *Id.* Finally, on May 20, 2008, he gave her an

"impairment rating" after her employer informed her they didn't have any work for her at the moment. Tr. 252-53. He calculated that she had 69% total impairment to her right hand "due to lost range of motion, loss sensation, and pain." Tr. 253. He further concluded that she had 92% total upper extremity impairment and 55% whole person impairment due to her injured right hand. *Id.*

The ALJ afforded "significant weight" to Dr. Mansuetta's opinion because he was Ms. Aldridge's treating orthopaedic surgeon and because he "specifically stated the claimant could return to full work status." Tr. 52. This weight designation was both rational and justifiable under the prevailing law in this Circuit. The ALJ also considered the opinion evidence offered by Dr. Marcus Whitman, M.D., who reviewed Ms. Aldridge's medical evidence on behalf of the State Agency. Tr. 52, 261. The opinion of a non-examining, reviewing physician is generally entitled to little weight and, taken alone, cannot constitute substantive evidence supporting an ALJ's decision. *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citation omitted). However, State Agency medical consultants are still "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 1527(e)(2)(i). When their opinions are substantiated by the evidence and do not contradict that of any treating physician, they may be accorded considerable weight. *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991) (citation

11

omitted).

In his report, Dr. Whitman opined that Ms. Aldridge could "occasionally" handle objects despite her impairment but that she could never "finger" or "feel" them. Tr. 261. He ultimately agreed that she could work at a "light" exertion level, noting that Ms. Aldridge could still use her right hand as an "assistive device." *Id.* The ALJ conferred "significant" weight to Dr. Whitman's opinion because it was consistent with the overall record and with the treating source evidence. Tr. 52. Indeed, he incorporated some of Dr. Whitman's prescriptions into his RFC determination. Tr. 50. Given the legal standards articulated above, the ALJ's judgment was appropriate. Because the ALJ properly weighted the opinions of Dr. Mansuetta and Dr. Whitman, their opinions qualify as substantial evidence in support of his ultimate RFC finding.

### B.     *The ALJ properly discredited Ms. Aldridge's subjective pain testimony.*

Ms. Aldridge cites her considerable pain in supporting her disability claim. In her hearing testimony, she vouched that her right hand "hurts continuously" because of the injuries to it. Tr. 17. She had to "keep it upright" and propped up because, if she laid it down, it throbbed uncontrollably. *Id.* The pain varied, she asserted, according to the weather. Tr. 18. In an earlier letter requesting the hearing, Ms.

12

Aldridge scaled her right hand pain as "always" a 4/10 "at the best" and as an 8/10 when she tried to use it. Tr. 69. As a result, she was inhibited in many of her daily activities and physical abilities. *Id.* The injury constrained her personal hygiene, household work, clothing decisions, meal preparation, and writing. Tr. 69-70. It also affected her sleep. Tr. 17. At the hearing, she opined that she could not return to work because the pain from her hand would cause her to take too many daily breaks and monthly absences. Tr. 42-43.

A claimant who seeks "to establish a disability based on testimony of pain and other symptoms" must show the following:

- Evidence of an underlying medical condition; and

- Either:

    - objective medical evidence confirming the severity of the alleged pain; or

    - that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ must articulate "explicit and adequate reasons" in order to discredit subjective testimony. *Id.* (citation omitted). Failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted). However, the ALJ does not need to "specifically refer to every piece of evidence in his decision," so long as the

decision shows that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).

The ALJ here was both explicit and convincing in explaining why he did not believe Ms. Aldridge had adequately proven an "underlying medical condition" that could "reasonably be expected to give rise to [her] claimed pain." Tr. 51-52. He relied on the treating source records as indicating that Ms. Aldridge overstated the extent of her symptomology and the resulting level of pain. Tr. 51.  He observed that Dr. Mansuetta specifically stated the claimant was having no particular pain at the time her released her back to full work. *Id.*  He accurately noted that the evidence indicates that the claimant did return to work but was informed that the company did not have any work at that time because "things are slow" and not as a result of her impairment. *Id.* He also noted that, although Ms. Aldridge indicated that she had difficulty writing, he observed during the hearing that she was able to sign her name. *Id.* He referenced her own rendition of what daily activities she could still perform despite her impairment. Specifically, she testified that she could still do laundry, cook, perform simple household chores, and drive a vehicle. *Id.* The ALJ inferred from this that her hand was still "functional." *Id.* The court agrees and considers his analysis sufficient under the standard outlined above.

## **CONCLUSION**

14

The record substantially supports the ALJ's conclusion that Ms. Aldridge had the residual capacity to perform light work, with certain physical and environmental restrictions. The ALJ extensively reviewed the medical opinion evidence. It showed that Ms. Aldridge's treating physician considered her capable of gainful employment. The doctor's conclusion – stated  frequently over several months in which Ms. Aldridge claims to have been disabled – was reiterated by a qualified physician who examined her medical records. On top of these opinions, Ms. Aldridge admitted on her own that she was still able to use her right hand in certain functional settings. Considered altogether, the ALJ has documented "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, 703 F.2d at 1239.

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court thus finds that the Commissioner's decision is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separated order.

**DONE** and **ORDERED** this the 30th day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

15